UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JANICE QUELLO,

            Plaintiff,

    v.

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

           Defendant.

CASE NO.     C06-5533FDB-KLS

REPORT AND
RECOMMENDATION

Noted for April 6, 2007

Plaintiff, Janice Quello, has brought this matter for judicial review of the denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is sixty-two years old.[2] Tr. 38.  She has a college education and past work

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Linda S. McMahon.

[2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1  experience as an insurance agent. Tr. 22, 65. 70, 87.

2      On May 29, 2001, plaintiff filed an application for disability insurance benefits, alleging disability as

3  of February 15, 1996, due to multiple sclerosis. Tr. 21-22, 58, 64.  At the initial and reconsideration

4  determination levels, she was found to be disabled as of June 14, 2001. Tr. 41, 45.  A hearing was held

5  before an administrative law judge ("ALJ") on July 14, 2003, at which plaintiff, represented by counsel,

6  appeared and testified, as did a lay witness and a vocational expert. Tr. 347-92.  On September 11, 2003,

7  the ALJ issued a decision, affirming the determination that plaintiff was disabled as of June 14, 2001, but

8  finding that she was capable of returning to her past relevant work prior thereto. Tr. 250-58.

9      On January 28, 2005, the Appeals Council granted plaintiff's request for review, vacating the ALJ's

10  decision and remanding the matter for further proceedings. Tr. 260.  Specifically, the Appeals Council

11  found that the ALJ's decision did not adequately address the March 4, 2002 opinion of plaintiff's treating

12  physician, Dr. Lawrence Teitel, regarding her impairment of function prior to the June 14, 2001. Id.  The

13  ALJ was directed to give further consideration on remand to plaintiff's maximum residual functional

14  capacity "during the entire period at issue," and determine whether additional evidence from a vocational

15  expert would be needed. Tr. 260-61.

16      On remand, a second hearing was held before the same ALJ on October 12, 2005, at which plaintiff,

17  represented by counsel, appeared and testified, as did a medical expert. Tr. 393-418.  On March 27, 2006,

18  the ALJ issued a decision, again determining plaintiff to be not disabled during the period prior and up to

19  June 2001, finding specifically in relevant part with respect to that period:

20      (1)   at step one of the disability evaluation process,[3] plaintiff had not engaged in
            substantial gainful activity since her alleged onset date of disability;
21
22      (2)   at step two, plaintiff had a "severe" impairment consisting of relapsing remitting
            multiple sclerosis;

23      (3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of
            those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and
24
25      (4)   at step four, plaintiff had the residual functional capacity to lift and carry twenty
            pounds occasionally and ten pounds frequently, stand and/or walk for two hours
26            in an eight hour workday in ten to fifteen minute increments, and sit for an
            unlimited amount of time, with certain other postural and environmental
            limitations, which did not preclude her from performing her past relevant work.
27

28      [3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.
    See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

REPORT AND RECOMMENDATION
Page - 2

Tr. 28-29.  Plaintiff's request for review was denied by the Appeals Council on August 7, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 7; 20 C.F.R. § 404.981.

On September 18, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

(a)   the ALJ erred in finding that plaintiff's multiple sclerosis did not meet the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.09;

(b)   the ALJ erred in assessing plaintiff's credibility;

(c)   the ALJ erred in evaluating the lay witness evidence in the record;

(d)   the ALJ erred in assessing plaintiff's residual functional capacity;

(e)   the ALJ erred in evaluating the testimony of the vocational expert; and

(f)   the erred in selecting the proper onset date of disability.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ's Step Three Analysis Was Proper

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P,

Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir.

1999). If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled.

<u>Id</u>. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in

the Listings. <u>Tacket</u>, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20

C.F.R. § 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and

laboratory findings." <u>Id</u>. An impairment meets a listed impairment "only when it manifests the specific

findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs,

and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed

impairment." <u>Id</u>. at *2. However, "symptoms alone" will not justify a finding of equivalence. <u>Id</u>.

Plaintiff argues the ALJ erred in finding her multiple sclerosis did not meet the criteria set forth in

Listing 11.09. Listing 11.09 reads as follows:

11.09 Multiple sclerosis. With:

A. Disorganization of motor function as described in 11.04B; or

B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or
12.02; or

C. Significant, reproducible fatigue of motor function with substantial muscle weakness
on repetitive activity, demonstrated on physical examination, resulting from neurological
dysfunction in areas of the central nervous system known to be pathologically involved
by the multiple sclerosis process.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09. As described in Listing 11.04B, "[d]isorganization of motor

function" involves the "[s]ignificant and persistent disorganization of motor function in two extremities,

resulting in sustained disturbance of gross and dextrous movements, or gait and station." 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 11.04B. In addition:

Use of the criteria in 11.09C is dependent upon (1) documenting a diagnosis of multiple
sclerosis, (2) obtaining a description of fatigue considered to be characteristic of
multiple sclerosis, and (3) obtaining evidence that the system has actually become
fatigued. The evaluation of the magnitude of the impairment must consider the degree of
exercise and the severity of the resulting muscle weakness.

The criteria in 11.09C deals with motor abnormalities which occur on activity. If the
disorganization of motor function is present at rest, paragraph A must be used, taking

1  into account any further increase in muscle weakness resulting from activity.

2  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00E.

3     In determining that plaintiff's multiple sclerosis did not meet the criteria set forth in Listing 11.09,

4  the ALJ found as follows:

5     In his letter from March of 2002, Dr. Teitel opined that the claimant's [sic] "would
       probably qualify for disability." Ex 12F/1.  In support of this assertion, the doctor cited

6      his June 14, 2000 examination, in which he noted right leg weakness and arm
       clumsiness. *See* Ex 12F/1.  Although the doctor asserted that this would probably be

7      sufficient to qualify for disability, he is incorrect.  As shown above, under the first option
       under listing 11.09, there must be *significant and persistent* disturbance of motor

8      function in two extremities.  The doctor's examination notes never recorded significant
       or persistence [sic] disturbance of motor function.  *See generally* Ex 4F.  And in the

9      examination specifically cited in his letter, Dr. Teitel only noted "mild" unsteadiness of
       the arms and legs "as before with a weakness of the right leg over the left." Ex 4F/1.

10     This hardly approached a significant and persistent disturbance.  Additionally, the
       significant disorganization must result in *sustained* disturbance of gross and dextrous

11     movements, or gait and station.  There is no evidence of any such disturbance in the
       record during the period at issue.  In the other applicable option under 11.09, there must

12     be *significant*, reproducible fatigue of motor function, with *substantial* muscle weakness
       on repetitive activity, demonstrated on physical examination.  Again, the doctor's

13     examination notes establish complaints of fatigue and weakness, but nothing that rises to
       the level of significant fatigue or substantial muscle weakness, and nothing that was

14     "demonstrated on physical examination."  While I acknowledge that these words are
       subjective, it is clear that the mild symptoms and signs noted by Dr. Teitel during the

15     period at issue fail to come close to meeting the criteria of listing 11.09.

16     The medical expert testified that the medical evidence of record failed to establish that
       the claimant's multiple sclerosis met the listings.  I agree . . .

17
18  Tr. 24 (emphasis in original).

19     Plaintiff primarily takes issue with the ALJ's rejection of Dr. Teitel's March 4, 2002 letter, which

20  reads as follows:

21     Under Social Security guidelines an individual needs to have impairment of function of
       two of the four extremities to be considered disabled.  In the June 14th office evaluation,

22     I described weakness of the right leg and clumsiness of the arms, which would probably
       qualify for disability.  However, December 14, 1999[,] I recognized a weakness of the

23     leg, I reported the arm, strength, tone and coordination was symmetric, which would not
       meet Social Security guidelines at that date.

24     If patients have documented impairments of level of function due to things like pain or
       fatigue it also is taken into consideration.  The earlier notes don't seem to make mention

25     of significant impairment along that line.  The April 15, 1999 notes did report both arms
       were clumsy and legs were slow somewhat countering the November 1999 report.  In

26     terms of earlier deficits, on October 9th she had bilateral cerebellar finds and right leg
       weakness, which would meet Social Security guidelines.  That is similarly true in March

27     of 1998 and in September of 1997 where fatigue is mentioned as well as incoordination
       of her left side and weakness of the right leg.  Earlier in February 1997 she was still

28     walking a mile per day, so I suspect that that would not support disability at that time.
       Thus, in summary you probably could make a case that she's had significant impairment

of function with incoordination of her arms, weakness of right leg since at least
September 1997.

Tr. 246.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the
medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the
record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the
ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must
be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir.
1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact
inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts
"falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a
detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."
Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the
ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a
treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the
ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain
why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
(3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who
do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of
a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or
"by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

1  1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

2  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

3  opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

4  constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-

5  31; Tonapetyan, 242 F.3d at 1149.

6          Plaintiff first asserts that Dr. Teitel's opinion is uncontradicted in the record, and, as such, should

7  have been adopted by the ALJ.  The undersigned disagrees.  To support her assertion, plaintiff points to one

8  portion of the testimony of the medical expert, Dr. Robert Aigner, wherein Dr. Aigner testified that he

9  could not certify that Dr. Teitel's opinion was incorrect. Tr. 412.  Just prior to that remark, however, Dr.

10 Aigner testified that Dr. Teitel did not support his opinion "that well" with clinical findings. Id.  In addition,

11 Dr. Aigner elsewhere in his testimony made clear he felt the record showed that while plaintiff had

12 symptoms, there was not "enough there to say she was significantly impaired" by them. Tr. 407.  He further

13 noted a lack of "objective neurologic" findings he indicated should have been evident in her medical

14 records, but were not there. Tr. 408.

15         Indeed, in response to prior questioning from plaintiff's attorney, Dr. Aigner testified that he could

16 not certify that plaintiff's multiple sclerosis manifested in symptoms and signs consistent with the Listings,

17 commenting specifically that there was "just not enough indication" in the record that plaintiff's "problem

18 while present was severe enough to impair her ability to work." Tr. 411-12.  This testimony was noted by

19 the ALJ as well.  See Tr. 27.  Taken as a whole, therefore, Dr. Aigner's testimony shows he did not feel the

20 record supported either Dr. Teitel's opinion that plaintiff was disabled or a finding that plaintiff's multiple

21 sclerosis met any of the Listings.  Accordingly, the undersigned finds Dr. Teitel's opinion was controverted

22 by the testimony of Dr. Aigner, and not just uncorroborated as claimed by plaintiff.

23         Next, plaintiff argues the ALJ erred in rejecting the opinion of Dr. Teitel, because that opinion was

24 not supported by objective medical findings.  To support this argument, plaintiff relies on two older Ninth

25 Circuit cases, Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601 (9th Cir. 1984) (citing

26 even older circuit decision in which ALJ was found to have erred in rejecting uncontroverted treating

27 physician opinions in part due to physicians' inability to support their opinions with objective laboratory

28 findings), and Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (holding improper ALJ's rejection of

medical opinions solely on basis that those opinions were contrary to conclusions mandated by objective

1  findings).

2        Several much more recent Ninth Circuit decisions, however, have held that an ALJ "may discredit

3  treating physicians' opinions that are "brief, conclusory, and unsupported" either by "objective medical

4  findings" or "the record as a whole." <u>Batson v. Commissioner of the Social Security Administration</u>, 359

5  F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ need

6  not accept opinion of any physician, including that of treating physician, where it is brief, conclusory and

7  inadequately supported by clinical findings); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  As

8  noted by both the ALJ and Dr. Aigner, such is the case with respect to the March 4, 2002 opinion provided

9  by Dr. Teitel.

10        Plaintiff also attempts to make an issue out of the ALJ's statement that Dr. Teitel's opinion failed to

11  give a function by function analysis of the claimant's capacities, as required by Social Security Ruling

12  ("SSR") 96-9p, 1996 WL 374185.  Plaintiff argues that in so stating, the ALJ improperly shifted his duty to

13  conduct a function by function assessment of her residual capacity to perform work-related activities to a

14  treating physician.  Again, however, plaintiff takes this statement entirely out of context.  Certainly, had the

15  ALJ merely stated that he was rejecting Dr. Teitel's opinion for this reason, the ALJ would have committed

16  error in doing so.  Instead, the ALJ rejected that opinion because it was not supported by the weight of the

17  medical evidence in the record (<u>see</u> Tr. 24, 26-27), which, as explained above, it was proper for him to do.

18  As such, plaintiff's argument is wholly without merit.

19        Lastly, plaintiff argues her pain and symptom testimony should be taken into consideration at step

20  three of the sequential disability evaluation process.  At step three, however, a finding of disability is made

21  "on medical grounds alone." SSR 83-19, 1983 WL 31248 *1.  Plaintiff nevertheless asserts that evaluation

22  of multiple sclerosis under Listing 11.09 is analogous to step three determinations made in the context of

23  mental impairments.  She argues that because the Listings for multiple sclerosis and mental impairments

24  describe symptoms that are not easily measured, symptom testimony regarding severity and functional

25  limitations are of significant interest.  Plaintiff's argument, however, ignores the simple fact that nothing in

26  Listing 11.09 contemplates consideration of symptom testimony, and thus is without merit.

27  II.    The ALJ Erred in Assessing Plaintiff's Credibility

28        Questions of credibility are solely within the control of the ALJ.  <u>Sample v. Schweiker</u>, 694 F.2d

REPORT AND RECOMMENDATION
Page - 8

639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

Cir. 2001).

   To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; Dodrill v.

Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at

834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811,

818 (8th Cir. 2003).

   In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

also may consider a claimant's work record and observations of physicians and other third parties regarding

the nature, onset, duration, and frequency of symptoms.  Id.

   Here, the ALJ discounted plaintiff's testimony for the following reasons:

> Now turning to the credibility of the claimant's allegations, I find that she subsequently
> overstated the severity of her symptoms, which clearly did not bother her enough at the
> time for her to visit her treating physicians with any regularity.  When she was evaluated
> by her doctors during the period at issue they only noted mild symptoms.  For example,
> Dr. Teitel noted in April of 1999 that the claimant's arms were a "little clumsy" and her
> legs a "little slow." Ex 4F/5.  In June of 2000, he noted that the claimant had mild
> unsteadiness of the arms and legs "as before." Ex 4F/1.  Both her son and her brother
> acknowledged that the claimant skied in 1999, but on the beginners' hill, with family and
> equipment support.  See Ex 20E/3; 15E/9.  The fact that these witnesses felt that the
> claimant was therefore disabled shows that the claimant's functioning indeed had
> decreased by that time; however, the fact that she was able to ski under any
> circumstances shows that her functioning was not as bad as she now alleges.  I find that
> the medical evidence of record and statements regarding the claimant's function simply
> do not support the claimant's assertion of disability during the period at issue.
> Accordingly, I find that the claimant's assertions regarding the degree her impairments
> limit her functioning cannot be fully credited.

Tr. 26.  Plaintiff argues these were not clear and convincing reasons for discounting her credibility.  The

1    undersigned agrees the ALJ erred in discounting her credibility.

2        First, plaintiff asserts her lack of physician visits should not have impugned her credibility.  Failure to

3    assert a good reason for not seeking medical treatment "can cast doubt on the sincerity of the claimant's

4    pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d

5    1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment

6    for supposedly excruciating pain).  A claimant's statements, therefore, "may be less credible if the level or

7    frequency of treatment is inconsistent with the level of complaints, or the medical reports or records show

8    that the individual is not following the treatment as prescribed or there are no good reasons for their

9    failure." SSR 96-7p, 1996 WL 374186 *7.

10        On the other hand, the ALJ "must not draw any inferences" about a claimant's symptoms and their

11   functional effects from such a failure, "without first considering any explanations" that the claimant "may

12   provide, or other information in the case record, that may explain" that failure. Id.  Plaintiff testified that she

13   had a deal with her treating physician that, because she did not like to go to the doctor, she only was to

14   contact him when suffering a relapse lasting more than two days in length. Tr. 369.  The medical expert at

15   the hearing further testified that it is "a fairly common trait in MS [multiple sclerosis] patients, that they try

16   to minimize the severity of the clinical problems in terms of their own disability." Tr. 408.  However, there

17   is no indication that the ALJ considered these factors.

18        Plaintiff also asserts that the fact that her physicians noted only mild symptoms when she came in for

19   evaluations is not a valid reason for discounting her credibility.  She states that the symptoms described

20   usually cause significant functional problems.  Plaintiff, however, points to no objective medical evidence,

21   opinion or otherwise, to support this statement.  In addition, a determination that a claimant's complaints

22   are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v.

23   Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Here, for example, both the ALJ and the

24   medical expert noted that there was not enough objective medical evidence in the record to say plaintiff was

25   significantly impaired by her symptoms. Tr. 27, 407-08.  Indeed, there is very little of such evidence in the

26   record during the relevant time period. See, e.g., Tr. 135-36, 164-69, 171-74, 197.

27        Plaintiff argues the medical expert also testified that patients with multiple sclerosis often suffer from

28   increased muscle weakness, that is only evident on physical examination after the patient has been exercising

prior thereto. See Tr. 409.  This, plaintiff asserts, is consistent with Listing 11.09C, and with her testimony regarding her muscle weakness and ability to walk.  There is no testimony from Dr. Aigner, however, that the record contained objective evidence of her exhibiting significant muscle weakness during the relevant time period, nor does a review of the record reveal the presence of any.  Further, as explained above, plaintiff's testimony regarding her alleged inability to walk is not consistent with the "mild" clinical findings contained in the record.

As noted above, the ALJ also discounted plaintiff's credibility because "the fact that she was able to ski under any circumstances" in 1999, showed her functioning was not as bad as she has alleged. Tr. 26.  To determine whether plaintiff's symptom testimony is credible, the ALJ may consider her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  Plaintiff need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the ALJ failed to show she was able to spend a substantial part of her day skiing, let alone that such activity is transferrable to a work setting.  The undersigned agrees.  It is far from clear that the limited amount of skiing plaintiff did back in 1999, provided her with any skills that are transferrable to a work setting.  Further, as plaintiff points out, the record shows she stopped skiing completely by March 1999, which was well before June 14, 2001, the date the ALJ found she first became disabled.  Thus, even if skiing had provided plaintiff with some transferrable skills at one point in time, those skills were not being used for much of the time at issue here.

Defendant asserts the ALJ also identified that fact that plaintiff took trips and noted that she had a questionable work history.  The ALJ's statements defendant points to, however, are contained in the ALJ's prior decision. See Tr. 256.  The ALJ made no mention of those factors in the decision currently under review in this Court.  While the ALJ stated that his prior decision remained in the record as a summery and discussion of the evidence, the Appeals Council specifically remanded the matter to the ALJ to re-consider plaintiff's residual functional capacity, which necessarily involves a re-determination regarding credibility.  Further, the ALJ's failure to state in his prior decision what trips and other activities he found impugned plaintiff's credibility, lacks the requisite specificity.

As discussed above, two out of the ALJ's three stated reasons for discounting plaintiff's credibility were not clear and convincing. While it is true that the ALJ did properly discount plaintiff's credibility on the basis that her stated symptoms were inconsistent with the mild symptoms found by the physicians in the record, an ALJ cannot reject a claimant's testimony solely on the basis of a lack of objective medical evidence in the record.[4] See Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). As such, the ALJ's credibility determination is not valid, as it is unsupported on the whole by substantial evidence in the record. Tonapetyan, 242 F.3d at 1148.

III.    The ALJ's Evaluation of the Lay Witness Statements in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff submitted written statements from her son, Robert Quello, brother, Don Bottemiller, and friend, Susan Steepy, regarding her symptoms and limitations. With respect to those statements, the ALJ found in relevant part as follows:

> Taking each statement in turn, the claimant's son reported that the claimant had difficulty with her multiple sclerosis symptoms for as long as he could remember, including difficulty with her hands that interfered with typing and playing the piano, difficulty walking long distances as this resulted in weakness and fatigue, and impairments in her concentration and memory. See Ex 20E/2-3. As for the physical symptoms, I agree that the claimant has had some impairment for some time. In this case, however, the difficulty is assessing the degree of impairment during the period at issue. I find the [sic] Mr. Quello's statement did not address those issues. I find Mr.

---

[4]Plaintiff reads the second to last sentence in the paragraph in which the ALJ set forth the reasons why he was discounting her credibility – wherein the ALJ stated the medical evidence in the record did not support her assertion of disability – as a separate, final reason, which she asserts was insufficiently specific. As discussed above, however, the ALJ earlier did specifically find that plaintiff's symptom testimony was inconsistent with the "mild" objective medical findings noted by her physicians. Thus, read in the context of the whole paragraph, this was a sufficiently specific reason for discounting her credibility.

1    Quello's statement to be inconsistent with the medical evidence of record.  In it he relied
2    on historical conclusions, broad statements, and opinions, and the statement lacks the
specificity needed to establish the claimant's functioning during the period at issue.  I
3    also note that he asserted that his mother was disabled even before her alleged onset
date, which is before she herself alleged she was disabled and while she continued to
4    work.  This calls his interpretation of "disability" into question.  The claimant's brother
also reported that the claimant had been "impaired in her physical abilities for decades."
5    He referred to the family's last ski trip in 1999, when the claimant was unable to ski for
more than a few yards without falling and had to be supported by her husband to make it
6    down the beginners' hill.  He also asserted that the claimant's concentration and
attention had "noticeably diminished." Ex. 8E/2.  Again, I agree that the claimant has
7    been impaired for some time, but Mr. Bottemiller's statement adds little to the question
of the extent of her impairment during the period at issue.  As for Ms. Steepy's
8    statement, I note that it was completed on June 8, 2001, the same month in which the
claimant was found to be disabled. *See* Ex 9E/2.  The witness did not purport to address
9    the claimant's functioning at any prior time; therefore, her statement is not relevant to
the claimant's functioning during the period at issue.

10  Tr. 25.

11        Plaintiff first argues the ALJ erred by finding the statements of the above lay witnesses not helpful,

12  because they did not provide a function by function analysis of her residual functional capacity as required

13  by SSR 96-9p.  Once more, plaintiff asserts the ALJ cannot reject valid evidence for the reason that it does

14  not conform to his duty to make a specific residual functional capacity assessment.  This, however, is not

15  what the ALJ did here.  Indeed, nowhere in his evaluation of the lay witness evidence did the ALJ mention

16  SSR 86-9p or a function by function analysis.  Rather, the ALJ merely found that evidence provided little in

17  the way of shedding light on how plaintiff's impairment affected her functioning during the relevant time

18  period, which is a proper use of such evidence. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)

19  (Commissioner's regulations require ALJ to consider observations by non-medical sources as to how

20  impairment affects claimant's ability to work).

21        Nevertheless, for other reasons, the undersigned does find the ALJ's evaluation of the written lay

22  witness statements in the record to be not completely free of error.  For example, as noted above, the ALJ

23  discounted the statement of plaintiff's brother because it added "little to the question of the extent of her

24  impairment during the period at issue." Tr. 25.  At least with respect to his statements regarding plaintiff's

25  problems with being able to ski as of 1996, and being forced to stop doing so by March 1999 (Tr. 309),

26  however, the ALJ did not state why he found these statements added little to the question of the extent of

27  impairment between those dates.  Certainly, it provided some evidence concerning the state of her physical

28  capabilities during that time.

Similarly, the ALJ erred in discounting the statement of Ms. Steepy on the basis that she "did not purport to address" plaintiff's functioning at any time prior to June 8, 2001, the date Ms. Steepy completed her written statement. Tr. 25.  While Ms. Steepy described her observations of plaintiff's impairments and limitations generally in the present tense, she did state that she had known plaintiff for twenty-five years and saw her on a weekly basis. Tr. 84.  This should have put the ALJ on notice that Ms. Steepy also might have been describing plaintiff's functioning during the relevant time period.  Indeed, while it is true Ms. Steepy provided her statement during the same month in which plaintiff was found disabled, Ms. Steepy still provided it prior to June 14, 2001, and thus during the relevant time period.

On the other hand, the undersigned finds the ALJ did not err in calling into question the credibility of the written statement provided by plaintiff's son.  For example, the undersigned agrees with the ALJ that much of what Mr. Quello provided consisted of "historical conclusions, broad statements and opinions," most of which were not particularly specific and appeared to not entirely be based on his own personal observations of plaintiff. See Tr. 312-15.  In addition, given the "mild" objective medical findings in the record concerning the time period at issue, the ALJ was not necessarily remiss in discounting Mr. Quello's statements for this reason as well.  Further, the inconsistency the ALJ noted between Mr. Quello's assertion that plaintiff had disabling impairments even before she herself claimed she became disabled, is a further proper basis upon which to call his credibility into question.

Lastly, the undersigned notes that the ALJ also properly determined that the record failed to support the statements of plaintiff's son and brother that she had diminished concentration and attention, finding specifically as follows:

> First, the claimant did not complain of decreased concentration or attention to her providers during the period at issue. See Ex 4F, 5F, 6F.  She complained of dizziness in September of 2001, but that was after the period at issue. See e.g. Ex 10F/7.  At the consultative examination with Michael Nelson, M.D., in September of 2001, the claimant was oriented times three, with normal speech, comprehension, attention, naming, and repetition.  While the doctor mainly concentrated on the claimant's physical complaints, he did perform a mental status examination and found no deficits. Ex 7F/2. I note that this examination was performed after the period at issue.  That same month, the claimant underwent a neurological consultation with James R. McDowell, M.D., who found the claimant's mental status to be "normal.  Quite approperiate.  Medically sharp." Ex 11F/8.  This, again, was after the period at issue.

Tr. 25-26.  As noted above, the ALJ may discount lay testimony if it conflicts with medical evidence in the record, which he properly did so on this issue.

REPORT AND RECOMMENDATION
Page - 14

IV.    The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.   A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  Id.  It thus is what the claimant "can still do despite his or her limitations."  Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.  Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)."  Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."  Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> Turning to the claimant's functional assessment, I find that she was able to lift and carry 20 pounds occasionally and 10 pounds frequently, with the ability to sit for an unlimited amount of time and the ability to stand, and/or walk for two hours in an eight hour workday, in 10 to 15 minute increments.  She could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds.  She was unable to balance, but can occasionally stoop, kneel, crouch, and crawl.  She had to avoid hazards (machinery, heights, etc.) and extremes in temperature.

Tr. 26.  Plaintiff argues this assessment is incomplete, because it does not include her repetitive handling and fingering limitations or need to nap for two hours every afternoon.  The undersigned disagrees.

The specific limitations plaintiff seeks to add to the above residual functional capacity assessment are based entirely on her own symptom testimony.  See Tr. 363, 379-80.  While, as discussed above, the ALJ did err in evaluating plaintiff's credibility regarding her testimony, there is no support for, indeed, no mention of, those limitations in the objective medical evidence in the record.  Thus, as explained in further detail below, it is far from clear that the ALJ would be required to include them in his assessment of her residual functional capacity.  On the other hand, the undersigned does find that, given the ALJ's errors in evaluating the credibility of plaintiff, Mr. Bottemiller and Ms. Steepy, it cannot be said that the assessment

1    the ALJ did provide completely and accurately describes plaintiff's limitations.

2    V.      The ALJ's Evaluation of the Vocational Expert's Testimony

3          Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to

4    return to her past relevant work. Tackett, 180 F.3d at1098-99.  If a claimant cannot perform his or her past

5    relevant work, at step five of the disability evaluation process the ALJ must show there are a significant

6    number of jobs in the national economy the claimant is able to do. Id.; 20 C.F.R. § 404.1520(d), (e).  The

7    ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's

8    Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240

9    F.3d 1157, 1162 (9th Cir. 2000).

10         An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

11   posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

12   1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

13   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

14   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

15   the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

16   description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

17   2001).

18         The ALJ posed a hypothetical question to the vocational expert who testified at the first hearing,

19   which was substantially similar to the residual functional capacity with which the ALJ assessed plaintiff. Tr.

20   388.  In response to that hypothetical question, the vocational expert testified that because plaintiff's past

21   work as an insurance agent requires the ability to perform at the light work level, plaintiff would not be able

22   to perform that job due to the standing limitations imposed by the ALJ. Id.  In the decision under review by

23   this Court, however, the ALJ found as follows:

24         The record establishes that the claimant's prior work was in the following job: insurance
           agent, Dictionary of Occupational Titles (DOT) # 250.257-010, which is light, skilled
25         work, SVP 6.  Because the claimant was able to perform the demands of light work
           under the regulations during the period at issue, I find that she was able to perform her
26         past relevant work.  The job did not require her to perform the tasks precluded by her
           nonexertional limitations, namely the ability to climb, balance, stoop, kneel, crouch, or
27         crawl, work with hazards, or work with extremes in temperature.

28   Tr. 28.  Plaintiff argues this finding is incompatible with the ALJ's assessment of her residual functional

REPORT AND RECOMMENDATION
Page - 16

capacity, as well as the testimony of the vocational expert.  The undersigned agrees.

Light work is defined by the Social Security Regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); see also Social Security Ruling ("SSR") 83-10 (full range of light work requires standing or walking, off and on, for total of approximately 6 hours of 8-hour workday).  As can be seen, therefore, plaintiff's limitation to no more than two hours of standing and/or walking in an eight-hour workday falls way short of that required for the full range of light work.

Indeed, as noted above, the vocational expert at the first hearing testified that plaintiff would not be able to perform her past job as an insurance agent for this reason.  Defendant argues that vocational expert testimony is not required at step four of the sequential disability evaluation process.  Be that as it may, the fact is that the ALJ did call a vocational expert, who provided uncontroverted expert testimony regarding plaintiff's ability to perform her past relevant work.  Given that this uncontroverted expert testimony was in the record, the ALJ should have considered it in making his step four findings.  The ALJ's failure to do so constitutes error.

VI.   Plaintiff's Onset Date of Disability

Plaintiff argues the ALJ erred in finding she became disabled as of June 14, 2001, and that the ALJ should have used her alleged onset date of February 15, 1996, as the starting point for determining when she first became disabled pursuant to Social Security Ruling 83-20, 1983 WL 31249.  SSR 83-20 comes into play, however, only after plaintiff has met the "ultimate burden" of proving disability prior.  Armstrong v. Commissioner of the Social Security Administration, 160 F.3d 587, 590 (9th Cir. 1998).  In other words, it is only when the claimant has established disability and the "record is ambiguous as to the onset date of disability," that SSR 83-20 requires the ALJ to "assist the claimant in creating a complete record" that "forms a basis for" establishing a disability onset date.  Id.  As explained below, however, the record does not yet establish that plaintiff was disabled prior to June 14, 2001.  Establishing an onset date of disability

1   prior thereto pursuant to SSR 83-20 is thus premature.

2   VII.   This Matter Should Be Remanded for Further Administrative Proceedings

3          The Court may remand this case "either for additional evidence and findings or to award benefits."

4   Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

5   except in rare circumstances, is to remand to the agency for additional investigation or explanation."

6   Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

7   which it is clear from the record that the claimant is unable to perform gainful employment in the national

8   economy," that "remand for an immediate award of benefits is appropriate." Id.

9          Benefits may be awarded where "the record has been fully developed" and "further administrative

10  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

11  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

12          (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
            evidence, (2) there are no outstanding issues that must be resolved before a
13          determination of disability can be made, and (3) it is clear from the record that the ALJ
            would be required to find the claimant disabled were such evidence credited.
14
15  Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

16          Plaintiff argues this matter should be remanded for an outright award of benefits, asserting first that

17  she was disabled during the relevant time period pursuant to Listing 11.09.  As discussed above, however,

18  plaintiff has not established her multiple sclerosis met or equaled the criteria for that Listing.  Plaintiff also

19  asserts she should be found disabled based on the written statement provided by her son.  Also as discussed

20  above, the ALJ did not err in discounting the credibility of that statement.  While not expressly put forth as

21  a reason by plaintiff for finding her disabled, the undersigned further finds it inappropriate at this time to

22  issue a finding of disability based on the ALJ's erroneous evaluation of her credibility.

23          The Ninth Circuit has held that remand for an outright award of benefits is required where the ALJ's

24  reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record

25  that the ALJ would be required to determine the claimant disabled if he had credited the claimant's

26  testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).  The Court of Appeals went on to state,

27  however, that it was "not convinced" the "crediting as true" rule was mandatory. Id.  Thus, at least where

28  findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the

    courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th

REPORT AND RECOMMENDATION
Page - 18

1   Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[5]  As noted above,

2   there is little, if any, objective medical evidence in the record to support the additional limitations plaintiff

3   alleges she had during the relevant time period, an issue that remains to be resolved on remand.

4        Similarly, where lay witness evidence is improperly rejected, that testimony may be credited as a

5   matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence

6   rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were

7   sufficient to meet or equal listed impairment).  However, again, as noted by the Ninth Circuit, the courts do

8   have "some flexibility" in how they apply the "credit as true" rule. Connett, 340 F.3d at 876.  In addition,

9   unlike in this case, Schneider dealt with the situation where the Commissioner failed to cite any evidence to

10  contradict the statements of five lay witnesses regarding her disabling impairments. 223 F.3d at 976.

11       Finally, plaintiff argues that she is disabled at step five of the disability evaluation process pursuant

12  to the Commissioner's Medical-Vocational Guidelines (the "Grids").  Plaintiff, however, did not raise this

13  argument in her opening brief, and so has not given defendant a fair opportunity to respond.  Nevertheless,

14  because the undersigned finds it to be without merit, it shall be addressed briefly below.

15       If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

16  process the ALJ must show there are a significant number of jobs in the national economy the claimant is

17  able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ

18  can do this through the testimony of a vocational expert or by reference to the Grids. Tackett, 180 F.3d at

19  1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  The Grids may be used if they

20  "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the

21  original).  That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id.

22  (emphasis in the original).

23       Plaintiff argues that she should have been found disabled pursuant to Grid Rule 201.06.  That rule

24  requires a finding of disability for claimants who have a maximum sustained work capacity for sedentary

25  work, are of advanced age (fifty-five years old or older), have a high school or greater education (which

26

27       [5]In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with

28  respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594.  The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id.  It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

REPORT AND RECOMMENDATION
Page - 19

does not provide for direct entry into skilled work), and have no transferrable work skills. 20 C.F.R. Pt.

404, Subpt. P, App. 2, § 201.06.  Plaintiff does meet the pertinent age and education requirements to be

considered under this rule.  In addition, the vocational expert at the first hearing testified that she had no

transferrable skills. Tr. 388.  The undersigned disagrees, however, with plaintiff's assertion that the ALJ

found her to be limited to sedentary work.

Sedentary work is defined in the Social Security Regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and small tools.  Although a
> sedentary job is defined as one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and
> standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  As discussed above, those regulations provide the following definition for light

work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some pushing and pulling of arm or leg
> controls.  To be considered capable of performing a full or wide range of light work,
> you must have the ability to do substantially all of these activities.  If someone can do
> light work, we determine that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability to sit for long periods
> of time.

20 C.F.R. § 404.1567(b); see also Social Security Ruling ("SSR") 83-10 (full range of light work requires

standing or walking, off and on, for total of approximately 6 hours of 8-hour workday).

In arguing she was limited to sedentary work by the ALJ, plaintiff focuses entirely on the fact that he

limited her to standing and/or walking for no more than two hours in an eight-hour workday.  While, as

discussed above, this limitation certainly takes plaintiff out of the full range of light work category, it is not

at all clear that she is limited to a maximum sustained capacity of sedentary work.  For example, sedentary

work involves lifting no more than ten pounds at a time.  However, the ALJ found plaintiff able to lift and

carry objects at a level consistent with the full range of light work for those tasks.  In at least this respect,

therefore, the ALJ found plaintiff capable of working at a greater than sedentary level.  But because issues

remain with respect to whether plaintiff's residual functional capacity overall should be categorized more at

the sedentary level or at the light level, this is an additional issue to resolve on remand.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 6, 2007**, as noted in the caption.

DATED this 13th day of March, 2007.


Karen L. Strombom
United States Magistrate Judge